# UNITED STATES DISTRICT COURT
## DISTRICT COURT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **Chidiebere Nwaubani** | ) | |
| (Plaintiff) | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | No. 1:13-CV-12552-JLT |
| **Divina Grossman**, in her official capacity as | ) | |
| Chancellor, University of Massachusetts Dartmouth) | | |
| and in her individual capacity, et al. | ) | |
| (Defendants) | ) | |

--------------------------------------------------------------

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S RULE 59(e) MOTION FOR EMERGENCY RECONSIDERATION
## AND
## EMERGENCY INJUNCTIVE RELIEF

As a threshold matter, this Court has jurisdiction to reconsider its order filed on June 10, 2012 and entered on June 11, 2014 (Dkt. 50)—especially, because of Defendants' renewed retaliatory plot to terminate Plaintiff's employment.[1]

Motions for and against a preliminary injunction have been fully briefed and pending before this Court and neither party requested a hearing on the motion. The Court is therefore in a position to issue an emergency injunctive relief based on Plaintiff's Amended Motion for Preliminary Injunction together with the issues raised herein, and Defendants' response to that motion.[2]

---

[1] *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962) ("Absent an appeal, a district court has complete power over its interlocutory orders." (citing *John Simmons Co. v. Grier Bros.*, 258 U.S. 828 (1922). "And, absent an appeal, it lay within the discretion of the district court to consider newly presented evidence." (citing *Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1 (1943).

[2] Plaintiff hereby restates and incorporates by reference his Amended Motion for Preliminary Injunction (Dkt.27), Memorandum in support (Dkt.28) and all supporting/accompanying materials filed with the Court on March 14, 2014.

In his Amended Motion for Preliminary Injunction, Plaintiff marshaled abundant facts, supported by overwhelming documentary evidence, showing that Defendants have engaged in a systemic pattern, practice and even policy of willfully depriving him of his clearly established constitutional rights; that they have consistently acted in reckless and callous disregard of and deliberate indifference to those rights; and that Defendants are therefore liable under 42 U.S.C. § 1983.

The Court will readily find that an injunction is merited because Plaintiff sufficiently demonstrated a substantial likelihood of success on the merits; that he will most certainly continue to suffer irreparable injuries absent an injunctive relief; and that neither Defendants nor the public interest would suffer any injury by such an order. On the other hand, Defendants did not and cannot rebut the **facts** marshaled by Plaintiff or dispute the documentary evidence. Besides, Defendants failed to demonstrate that they would suffer any injury from an injunctive relief.

Furthermore, by the *Mathew* formula—derived from *Matthew v. Eldridge*, 424 U.S. 319 (1976)—the private interest at stake here is quite weighty and there is no governmental interest, which means that Plaintiff has a compelling claim to an injunctive relief.

**Procedural History**

Plaintiff filed this lawsuit on October 11, 2013. On November 1, 2013, Plaintiff's attorney asked two University of Massachusetts-Dartmouth (UMassDartmouth) officials, Danielle-Drabble-Almeida (Benefits Coordinator) and Christina Flagg (Payroll Supervisor) for Defendants' home addresses for the purpose of serving them the court

papers. There was no response to this request and a second request made on November 8, 2013.

On November 15, 2013, Plaintiff received a letter dated 11-08-2013 from Ms. Deidre Heatwole, University of Massachusetts General Counsel, informing him that "the University of Massachusetts Board of Trustees will consider the recommendation of the Dartmouth campus to terminate [his] employment for cause" first at a meeting of the Board's Committee of Academic and Student Affairs (CASA) on November 20, 2013; and "[i]f there is a vote in CASA recommending termination, the Board of Trustees will consider this recommendation at its meeting on December 11, 2013." Ms. Heatwole notified Plaintiff that the Board "has elected to convene in executive session at both CASA, and if necessary, at the full Board meeting."

In their unusual haste to retaliate against Plaintiff, Defendants Caret and Grossman as well as non-Defendant Heatwole and the Board failed to comply with Article VII. I.1 of the Faculty Federation collective bargaining agreement which stipulates that:

> Tenure status...is distinguished from non-tenure status by the fact that University must stipulate reasons for termination of employment other than by retirement mandated by law. Faculty members enjoying tenure may not be discharged except by a decision of the President and for just cause.

In this regard, they rushed the" recommendation of the Dartmouth campus" to the Board which, in turn promptly scheduled it for immediate hearings without (a) stipulating reasons for termination to Plaintiff and, (b) without "a decision of the President."

The retaliatory "recommendation" to terminate Plaintiff's employment and the Board's speedy scheduling of the "recommendation" for immediate consideration caused

Plaintiff to amend his Complaint and seek preliminary injunction that, among other reliefs,

(a) enjoined and restrained any person or group of persons, acting in any capacity, from considering, discussing, or taking any decision on the "recommendation of the Dartmouth campus" to terminate his employment;

(b) ordered and enjoined Defendant Grossman, in her official capacity, to re-instate Plaintiff's salary from January 7, 2013 retroactively;

(c) ordered and enjoined Defendant Grossman, in her official capacity, to give Plaintiff the following information—before making the resulting back payment to Plaintiff: (i) his gross salary for the year 2013, (ii) his net salary (the gross amount minus all deductions) for the year 2013, (iii) a breakdown of all deductions made from his salary for the year 2013, (iv) his federal and state tax rates on December 31, 2012, and (v) the federal and state tax rates on the lump sum back payment of his salary for the year 2013;

(d) ordered and enjoined Defendant Grossman, in her official capacity, to give Plaintiff the same information in above (c) with respect to his salary since January 1, 2014;

(e) ordered and enjoined Defendant Grossman, in her official capacity, to re-instate Plaintiff's access to the African and African-American Studies (AAAS) Office and his mailbox located therein, and

(f) ordered and enjoined Defendant Grossman, in her official capacity, to release to Plaintiff all his official mail, including his professional journals, that have been confiscated since September 2012.

All Defendants were served with the Amended Complaint and the motion for injunctive relief on February 4-6, 2014. On February 10, 2014, Defendants filed a motion, under Fed. R. Civ. P. 8(a) (2) and (d) (1) to dismiss the Amended Complaint and to stay the preliminary injunction motion.

On February 28, 2014, after Plaintiff had responded to Defendants' motion, the Court issued an order that required Plaintiff to file an Amended Complaint that complied with Rule 8 by March 14, 2014; stayed briefing on Plaintiff's motion for injunctive relief; and required Defendants to respond to both the Amended Complaint and the motion for preliminary injunction within fourteen days after Plaintiff's filings.

In compliance with the Court order, Plaintiff filed both an Amended Complaint and an amended motion for preliminary injunction on March 14. Plaintiff sufficiently demonstrated that he continues to face immediate and imminent monumental harm— especially, because of the continuing confiscation of his salary and the continuing retaliatory and vindictive commitment of Defendants Caret and Grossman to terminate his employment on the basis of deceitfully contrived false allegations and through a constitutionally flawed plot.

Ten days after Defendant Caret and his co-Defendants filed their first Rule 8 motion, Defendants Caret and Grossman and non-Defendant Ms. Heatwole renewed their deep contempt of this Court, our judicial system, and Plaintiff's constitutionally protected rights by sending to Plaintiff, via courier service, a letter dated February 24, 2014 and titled "RE: Notice of pre-termination hearing." In the said letter, Defendant Caret stated that he had hand-picked one Robert Banks of Michigan State University to conduct the

hearing,[3] required Plaintiff to respond by 5:00 p.m. Monday, March 3, 2014 if Plaintiff

wanted a hearing; otherwise he "will make [his] recommendation to the Board [of

Trustees] based on the materials previously provided to [him]" by Defendant Grossman.

On April 18, 2014, Defendants filed a second Fed. R. Civ. P. 8 to dismiss the

Second Amended Complaint and their opposition to Plaintiff's motion for injunctive

relief. These motion resulted in the Court order filed on June 10, 2012 and entered on

June 11, 2014. Obviously encouraged by that order, Defendants have renewed their

unconstitutional plot to terminate Plaintiff's employment.

**First Amendment Deprivations**

The evidence is incontrovertible that Defendants Caret and Grossman, non-

Defendant Heatwole and the Board of Trustees embarked on their unconstitutional plot to

terminate Plaintiff's employment in a spiteful effort to "get" him because he filed this

lawsuit. This institutional retaliatory animus, in reckless disregard of Plaintiff's First

Amendment rights, underpins the other adverse actions they have taken against Plaintiff,

including confiscation of his salary since January 2013, denying him access to the AAAS

Office as well as confiscation of his mailbox and mail since September 2012.

On September 14, 2012, Plaintiff notified senior University administrators,

including Defendants Farrington, Fowler, Santos, Riley, Santow, and Majewski that he

had filed a complaint with Massachusetts Commission Against Discrimination (MCAD).

---

[3] Defendant Caret did not cite his authority, and he has none, to handpick this individual (or any other individual for that matter) to conduct the hearing. Indeed, University of Massachusetts procedures do not provide for the President to handpick someone to conduct the pre-termination hearing. Quite significantly, Defendants Caret, Grossman, and non-Defendant Heatwole dispensed with any faculty hearing which is standard in the termination of tenured faculty, even in the University of Massachusetts. See Article XVIII of the Agreement Between the Board of Trustees of the University of Massachusetts and the Massachusetts Society of Professors Faculty Union/MTA/NEA, July 1, 2012 through June 30, 2014; and Procedures for Personnel Actions (Article 10.6) of the University of Massachusetts Medical School.

Defendants responded by immediately escalating their brutal campaign of discriminatory/retaliatory harassment of Plaintiff.[4]

Thus, in mid-September 2012, Plaintiff found that his mailbox which has been located in the AAAS Office since September 2005 was no longer there. Confiscation of Plaintiff's mailbox has meant that since September 2012, he has not seen his official correspondence and his professional journals and newsletters.

Article VII. I.1 of the collective bargaining agreement specifies, in part, that: "Until a final decision on termination has been reached, the unit member shall continue at full pay." Nonetheless, by letter dated January 3, 2013, Defendant Fowler placed Plaintiff on an indefinite "unpaid administrative leave" effective January 7, 2013. Defendant Santos (who supervises Payroll) implemented this constitutional transgression by promptly cutting off Plaintiff's salary and benefits (health insurance, life insurance, optional life insurance, long term disability insurance, and pension).

In *Powell v. City of Pittsfield*, this Court affirmed that "[o]ur constitutional system gives every citizen the right to seek redress in the courts…without fear that recourse to the law will make that citizen a target for retaliation.[5] The First Circuit agreed, adding that: "For decades, the Supreme Court has consistently recognized the right to petition all branches of the government, including the courts, for redress of grievances as 'among the most precious of the liberties safeguarded by the Bill of Rights." The Circuit Court therefore concluded that "[c]laims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." *Powell v. Alexander*, 391 F. 3d 1, 16 (1st Cir. 2004). Also see González-Droz v. González-Colón, 660 F. 3d 1, 16 (1st Cir. 2011) ("Citizens

---

[4] This is well-document in the Second Amended Complaint and substantiated by the exhibits accompanying Plaintiff's motion for injunctive relief.
[5] 221 F. Supp. 2d 119, 121 (D. Mass. 2002).

have a First Amendment right to engage in certain kinds of speech, including the filing of

civil actions and testifying at administrative hearings. Government actors offend the First

Amendment when they retaliate against an individual for constitutionally protected

speech.")

**Unconstitutional Conducts, Especially First Amendment Violations, Are Routinely
And Promptly Enjoined**

"The Supreme Court has unequivocally admonished that even minimal

infringement upon First Amendment values constitutes irreparable injury sufficient to

justify injunctive relief." *Newsom v. Norris*, 888 F. 2d 371 (6th Cir. 1989) (citing an

extensive record of cases decided by federal courts).

In line with the Supreme Court's admonition, the First Circuit holds that when

plaintiffs make "a strong showing of likelihood of success on the merits of their First

Amendment claim, it follows that the irreparable injury component of the preliminary

injunction analysis is satisfied as well." *Sindicato Puertorriqueño de Trabajadores v.

Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012).

The case law, as catalogued by the 6th Circuit *Newsom v. Norris* court, shows that

Courts have uniformly and consistently held that "direct penalization, as opposed to

incidental inhibition, of First Amendment rights constitutes irreparable injury." In this

context, the 6th Circuit cited *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[t]he loss of

First Amendment freedoms, for even minimal periods of time, unquestionably constitutes

irreparable injury") (termination from employment for political reasons violated First

Amendment rights; injunctive relief properly accorded under such circumstances);

*Johnson v. Bergland*, 586 F.2d 933, 995 (4th Cir., 1978) (transfer of employee allegedly

for exercise of First Amendment rights; "[v]iolations of first amendment rights constitute

per se irreparable injury"); *Citizens for a Better Environment v. City of Park Ridge*, 567 F.2d 689 (7th Cir. 1975) (termination from employment for political reasons violated First Amendment rights; injunctive relief properly accorded under such circumstances).

Quite pertinent is *Romero Feliciano v. Torres Gaztambide*, 836 F.2d 1, 4 (1st Cir. 1987) (given the finding that civil servant was likely to succeed on the merits of his First Amendment claim that he was demoted in violation of his associational rights, finding of irreparable harm was not abuse of discretion. The harm the civil servant "would suffer is not only…the loss of his job *per se,* but also the penalty for exercising his associational rights. The chilling effect of that penalty cannot be adequately redressed after the fact.")

Defendants have, since September 2012, denied Plaintiff access to the AAAS Office, confiscated his mailbox and all his mail without offering any reason or explanation. Ironically, the case law, as it relates to prisoners, is clear that these confiscations constitute willful violations of Plaintiff's First Amendment rights. For example, see *Procunier v. Martinez*, 416 U.S. 396 (1974); *Turner v. Safley, 482 U.S. 78* (1987); *Shakur v. Selsky*, 391 F. 3d 106 (2nd Cir. 2004); and *Harrison v. Institution of Gang Investigations*, U.S.D.C. (N.D. Cal.), Case No. 3:07-cv-03824-SI (February 22, 2010).

**Conclusion**

"[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684 (1946). Furthermore, "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past

wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Macklenburg Bd. of Ed*., 402 U.S. 1, 15 (1971).

Plaintiff satisfied the requirements for an injunctive relief on the basis of his Amended Motion for Preliminary Injunction and its supporting/accompanying materials filed with the Court on March 14, 2014. Defendants have continued to deny Plaintiff access to his mailbox and mail. Defendants have also continued to confiscate Plaintiff's salary—especially by their continued refusal to address the issue of Plaintiff's back pay going back to January 2013, and by continuing to subject Plaintiff to purposeful, intentional, and unlawful discriminatory method of salary payment.[6] And as shown above, Defendants have renewed their unconstitutional plot to terminate Plaintiff's employment by their latest action through the Board of Trustees (Exh. 12).

Against this background, we respectfully request the Court to grant this motion for emergency reconsideration and grant Plaintiff an emergency injunctive relief based on the issues and arguments raised above and his Amended Motion for Preliminary Injunction filed on March 14, 2014.

Respectfully Submitted,

Chidiebere Nwaubani


/s/ Eric Nwaubani
Eric Nwaubani
PLAINTIFF'S COUNSEL
(DC #: 1011827; New York Bar #: 4421152)
1629 K Street, NW #300
Washington DC 20006
Telephone: (202) 446 8050
Email: ennwaubani@yahoo.com                    Dated:  June 23, 2014

---

[6] A Statement of Clarification on this subject is annexed to this Memorandum.

## CERTIFICATE OF SERVICE

I, Eric Nwaubani, hereby certify that the above document was transmitted through the CM/ECF electronic filing system of the United States District Court, to Denise Barton, Esq.

/s/ Eric Nwaubani
Eric Nwaubani, Esq.

Dated: June 23, 2014